UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| JEROME WOODY, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | Case No. CV608-070 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Claimant Jerome Woody appeals the Social Security Commissioner's denial of his application for disability insurance benefits. (Doc. 1.) For the reasons set forth below, the Commissioner's decision denying benefits should be **AFFIRMED**.

I. **BACKGROUND**

Woody, a 57-year-old former Claxton city councilman with a masters degree in public administration, seeks Title II (disability insurance) and Title XVI (supplemental security disability) benefits. (Tr. 16, 791.) Aside from his civic duties, he has worked as a

vocational rehabilitation counselor with the Georgia Department of Labor and as a poultry inspector. (Tr. 773, 792.)

Woody filed his Title II and Title XVI applications in 2004, alleging that he became disabled on December 1, 2003.[1] (Tr. 16.) His claims were denied initially and on reconsideration. (*Id.*) Thereafter, he requested a hearing before an Administrative Law Judge ("ALJ"). The initial hearing was held on September 27, 2006 and a supplemental hearing was held on May 23, 2007. (Tr. 761, 785.) The ALJ entered an order denying claimant's benefits applications (tr. 25), and the Appeals Counsel denied Woody's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 6.) Claimant then filed a complaint in this Court contending that the ALJ erred in reaching his decision.

## II. ANALYSIS

### A. Standard of Review

Affirmance of the ALJ's decision is mandatory if his conclusions are supported by substantial evidence and based upon an application

---

[1] Woody received disability benefits from 1982 through 2002 for depression, anxiety, affective disorders, and borderline intellectual functioning, but his benefits were terminated since his "disability ceased on August 2, 2001." (Tr. 26-30.)

2

of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159; *Lewis v. Astrue*, 2009 WL 464264 at *2 (M.D. Fla. Feb. 24, 2009) (unpublished). The substitution of this Court's judgment for that of the Commissioner is not allowed. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).

The burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether claimant has met his burden of proof, the Court looks to the five-step evaluation process set forth in the

3

Social Security Regulations. 20 C.F.R. § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that he has not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228. At step two, he must demonstrate a severe impairment or combination of impairments. *Id.* Then, at step three, if the claimant's impairment meets or equals a listed impairment, he is automatically found disabled. *Id.* If not, he must advance to step four, which requires him to prove an inability to perform past relevant work. *Id.* If he cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.*

B.  **The ALJ's Determination**

The ALJ found that claimant had engaged in substantial gainful activity from his claimed disability onset date of December 1, 2003 through December 31, 2005. (Tr. 18.) Since Woody was not eligible for disability benefits while he was gainfully employed, the ALJ only addressed whether claimant was disabled from January 1, 2006

4

through the date of the decision. (*Id.*) At step two, the ALJ discussed Woody's impairments: thoracic scoliosis, knee pain, asthma/bronchitis, hypertension, loss of hearing, limited mental functioning, depression, and anxiety. (Tr. 19.) He concluded that the scoliosis and asthma were severe but the remaining impairments were not. Specifically:

> Claimant's hypertension is non-severe, as it has not been shown to result in associated end organ damage or functional limitations. Claimant's hearing loss is non-severe. Claimant's knee condition does not meet the durational requirement — at least 12 consecutive months — for an impairment to be considered disabling under the Act. Claimant does not have a severe mental impairment.

(*Id.*) At step three, the ALJ determined that claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. (Tr. 21.) He then found that claimant retained the residual functional capacity to perform his past relevant work as a vocational rehabilitation counselor and city councilman and was thus not disabled under the Social Security Act. (Tr. 24.)

### C. Woody's Claims

Woody contends that the ALJ erred in (1) improperly rejecting the opinions of his treating and examining physicians, and (2)

5

determining that he could perform past relevant work that does not qualify as substantial gainful activity (i.e., working as a city councilman). (Doc. 10 at 1.)

1. *Physicians' Opinions*

"Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians' [opinions] are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2) & (5)). However, an ALJ can accord more or less weight to a particular source if there is good cause to do so. *See Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991).

In Woody's first claim of error, he contends that the ALJ

> improperly rejected the opinions of treating and examining physicians, failed to apply the correct standards concerning diagnosis and statements of treating physicians and failed to properly evaluate and explain the weight given the medical evidence.

(Doc. 10 at 4.) Specifically, he takes issue with the ALJ's treatment of the medical opinions of Doctors Chester and Clemons. (*Id.* at 4-5.)

Dr. Chester, a licensed psychologist, conducted claimant's psychiatric disability evaluation. (Tr. 705-714.) Woody contends that Chester's diagnoses of major depressive disorder and pain disorder are due deference since Chester was an examining physician. (Doc. 10 at 5.) While Dr. Chester did examine Woody, it was a one-time examination for the purposes of determining disability eligibility, and the opinions of such a one-time examiner are generally not entitled to special weight in a disability determination. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). In any event, Woody radically mischaracterizes Dr. Chester's report.

While Dr. Chester's list of diagnoses arguably support Woody's position, Chester noted that he felt that the "test results [underlying the diagnoses] . . . represent a minimal estimate of his capabilities *due to lack of effort.*" (Tr. 710 (emphasis added).) Further, Woody "provided only minimal background information, and he often omitted pertinent details." (Tr. 707.) The ALJ, facing such equivocal evidence

7

of disability, discounted Dr. Chester's diagnoses, noting that the examination was of little value because of Woody's "lies, evasions, and omission[s]."[2] (Tr. 20.) Upon review, the Court is satisfied that the ALJ applied the correct legal standard and appropriately evaluated

---

[2] Dr. Chester also provisionally diagnosed Woody with borderline intellectual functioning. (Tr. 710.) The ALJ made much of the borderline intelligence diagnosis. (Tr. 20.) Woody asserts that the ALJ's analysis was deficient, since he "wrongfully assume[d] that the intelligence range of the Plaintiff was somehow related to his disability." (Doc. 1 at 6.) He states that his mental impairments were depression and pain related, not cognition related. (Doc. 1 at 6.)

The ALJ stated in his opinion that the "claimant alleges limited cognition." (Tr. 20.) Even if that was error, his discussion of the IQ results was proper since it supported his determination that Dr. Chester's other diagnoses (i.e., depression and pain disorder) should be discounted. (*Id.*) The reasoning is thus: (1) Woody is a highly educated man who demonstrated mental acuity at his hearing; (2) despite his mental acuity and educational background, he tested in the borderline range of intelligence and showed a notable lack of effort during that testing; (3) Woody's lack of responsiveness suggests an attempt to manipulate the testing outcome; (4) consequently, Chester's other diagnoses are suspect — those diagnoses likely resulted from Woody's "lies, evasions, and omission[s]." (*Id.*) This interpretation is supported by the record. After discussing claimant's intellectual abilities, the ALJ stated that the "psychological consultative evaluation, *in general*, is of little value. . . ." (*Id.* (emphasis added).)

Woody also contends that the ALJ erred in his mistaken assertion that Dr. Chester was not aware of Woody's educational background. (Doc. 10 at 6; Tr. 23.) Dr. Chester in fact knew that Woody had a Masters Degree in Public Administration. (Tr. 709.) Chester discovered Woody's educational background from prior records, however, since he did not volunteer his educational background during testing. (Tr. 709.)

Both of the ALJ's mistakes were harmless. A thorough review of the record supports the ALJ's determination that Woody lied in order to obtain disability benefits. During his psychological evaluation, he withheld his educational background, purposefully underperformed during his cognitive evaluation, omitted his criminal record, failed to mention his problems with substance abuse, and omitted crucial portions of his work history (as he did not inform Dr. Chester that he had worked as a city councilman for well over a decade). (Tr. 23; Tr. 709-10, 24.) The Court is therefore satisfied that ALJ's determination as to Woody's depression and pain are supported by substantial evidence.

8

and explained the weight to be accorded Dr. Chester's evaluation. Thus, the Commissioner's determination as to Dr. Chester was supported by substantial evidence.

Dr. Clemons, indisputably a treating and examining physician, presents a closer call, but Woody's claim still fails.[3] Clemons submitted a letter to the Commissioner stating:

> I have treated Mr. Jerome Woody during the past several years for acute lumbar pain, scoliosis, hypertension, as well as asthma and acute sinusitis. . . . On examination, he displayed an obvious deformity causing him to tilt to the right. There was tenderness in his lumbar spine associated with muscle spasm. He is in constant pain because of this medical condition. He has been treated with several pain medications to help relieve his discomfort. As a result, [sic] of severe pains and medications he has been unable to work. This has been permanent and ongoing situation for patient.
>
> His condition has worsened within the last year to where he has not been able to report to work since June, 2005. Patient referred to and seen by the Pain Management Center in Statesboro. . . . Patient has been treated in my office [f]or acute asthma, and chronic sinusitis on several occasions, resulting in hospitalization. His bronchial asthma is considered severe enough to prevent him from working.

---

[3] Claimant contends that Dr. Clemons has been his treating physician in Claxton for many years and that their relationship is borne out by "voluminous office notes and examinations." (Doc. 10 at 4.) The notes are not in fact "voluminous," however. Claimant only cites to approximately 27 pages of notes in the record.

9

> This patient also suffers from acute hypertension, and takes the following medications: Norvasc, 10mg, Topol XL, 100mg, and Diovan, 160/25. Patient also suffers from depression. . . . In my medical opinion, I would consider Mr. Jerome Woody permanently disabled.

(Tr. 618.) In addition to the letter, he completed a series of questionnaires stating that Woody is permanently disabled. (Tr. 619-626.) The ALJ discounted Clemons's opinion as unsupported patient advocacy. (Tr. 20-21.)

Dr. Clemons is a general practitioner. As he is neither an orthopedist nor a psychiatrist, his medical opinion as to those matters is not due the same weight as would be accorded a specialist. *McNamee*, 164 F. App'x at 923 (citing 20 C.F.R. § 404.1527(d)(5)). In reaching his decision, the ALJ noted that the specialists who examined claimant did not reach the same conclusions as Dr. Clemons. (Tr. 20.) For instance, he referred to Dr. Novack, a disability rehabilitation specialist, who ran a full gamut of tests upon Woody, including range of motion tests, and found that Woody's scoliosis, though severe, did not prevent him from returning to work. (Tr. 716.) Indeed, Woody's own treating orthopedist, Dr. John George, sent him back to work

after complaints of lower back pain in 2003. (Tr. 254-265.) Dr. George noted "I have told Mr. Woody that based on his findings I can only give him one more week of light duty and he should return to regular duty." (Tr. 254.) As to the psychiatric diagnoses, Dr. Chester indicated that Woody intentionally lied and omitted certain facts in order to receive a favorable psychological evaluation. Moreover, another disability specialist noted that while Woody suffers from major depression, it was in partial remission from the medications prescribed by his physicians. (Tr. 391.)

Nor was there any medical evidence supporting Dr. Clemons's conclusion that Woody's bronchial asthma entirely precluded him from returning to *any* sort of employment. Indeed, the ALJ noted that contrary to Clemons's opinion, there

> is no evidence that claimant has had exacerbations of asthma or that he has required hospitalization or emergency room treatments for asthma during the pertinent period.[4] In October 2005 he complained to a treating source of a three-day productive cough, and there was minimal wheezing in chest exam that day but not upon his return the following month. Claimant was

---

[4] Claimant was hospitalized in November 2003 for breathing related difficulties and MRSA, but the episode occurred before his claimed disability onset date. (Tr. 314.)

11

diagnosed with bronchitis — not asthma. His cough was treated with Robitussin, but no medications for asthma were ordered.... During a March 2006 visit for requesting diet pills, minimal wheezing was detected and claimant was diagnosed with asthma. Claimant was subsequently prescribed a bronchodilator to use as needed, but there are no documented asthma attacks in the medical evidence of record.

(Tr. 18 (footnote added).)

Based upon the record as a whole, the Court concludes that the ALJ applied the proper legal standard and had good cause to reject Dr. Clemons's opinion as sheer patient advocacy rather than a sound medical determination.[5] (Tr. 21.) Accordingly, the Commissioner's determination was supported by substantial evidence. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (good cause for rejecting a treating physician's findings exists when his opinion was not bolstered by the evidence or the evidence supported a contrary finding).

---

[5] The Court takes judicial notice that Mr. Woody recently pled guilty in this district to one count of acquiring and obtaining a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge, and he is presently awaiting sentencing. *United States v. Woody*, No. CR608-039 (S.D. Ga. filed Dec. 11, 2008). Woody admitted to purchasing large quantities of opiates using a prescription pad stolen from Dr. Clemons, the very doctor whose opinion the ALJ dismissed as overly zealous patient advocacy. As a result of this conviction, Woody will be ineligible for monthly benefit payments during any period of incarceration. 42 U.S.C. § 402(x).

## 2. *Past Relevant Work*

Woody next contends that the ALJ erred by determining that he could return to past relevant work as a city councilman, since that did not qualify as substantial gainful activity. (Doc. 10 at 7.) Specifically, he contends that the "record at hearing establishes that [he] received $400 per month . . . from his one-hour a month elected position as a city councilman . . . [and that] amount does not rise to the level of presumptive substantial gainful activity pursuant to 20 C.F.R. § 416.974." (Doc. 10 at 7-8.) In addition, he notes that the job was not "performed in the national economy for a normal full-time 40 hours per week" and thus does not qualify as past relevant work. (*Id.* at 8.)

Claimant, however, neglects to mention that the ALJ also found that claimant could return to other work, which by his own definition would qualify as substantial gainful activity. Based upon the vocational expert's testimony at the hearing, the ALJ found that Woody can return to work as a vocational rehabilitation counselor, quality control inspector at a poultry plant, *and* as a city council member. (Tr. 24.) Since the ALJ found that Woody can return to substantial gainful employment, any error in referring to the city

council job as substantially gainful past relevant work is entirely harmless. *See Carson v. Comm. of Soc. Sec. Admin.*, 300 F. App'x 741, 746 n.3 (11th Cir. 2008) (applying harmless error analysis to social security appeals where the record does not indicate that the error "affected the ALJ's decision"); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (same).

## III. CONCLUSION

Based on the foregoing, the Commissioner's decision should be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED** this ___9th___ day of September, 2009.

/s/ W. Smitt
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA